UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

DANIEL SHELTON, on behalf of himself
and all others similarly situated,

                Plaintiff,

v.

IMPERIAL DISTRIBUTORS, INC.,

                Defendant.

Case No.: 1:13-cv-00150

Judge: Mattice/Lee

## MEMORANDUM IN SUPPORT OF JOINT MOTION
## FOR APPROVAL OF SETTLEMENT AGREEMENT

      This is a collective action filed pursuant to Section 216(b) of the Fair Labor Standards Act (the "FLSA"), not a Rule 23 class action. Plaintiff is employed as a Sales Service Representative (an "SSR") at Defendant Imperial Distributors, Inc. ("Imperial"), and seeks overtime back pay and liquidated damages pursuant to the FLSA. *See, generally*, Complaint. Imperial contends that Plaintiff and other SSRs are exempt from the overtime requirements of the FLSA pursuant to the outside sales exemption and/or the administrative exemption. *See*, Answer. Plaintiff has filed a motion for court-supervised notice to all similarly situated SSRs at Imperial. The parties have reached a comprehensive settlement in this case, obviating Imperial's need to respond to such motion if the settlement is approved by the Court.

      In connection with the proposed settlement, the parties have filed a Joint Motion for Approval of Settlement Agreement. For the reasons that follow, the parties' motion should be **GRANTED.**

# I.    SUMMARY OF SETTLEMENT TERMS

The parties' settlement agreement (the "Agreement"), contains several salient components. Such components include: (1) payments to a settlement class in exchange for releases; (2) payment of such settlement class' attorneys' fees; and (3) an incentive payment to the named Plaintiff. These components, as well as additional terms of the Agreement, are discussed below. A copy of the Agreement is attached hereto as Exhibit A.

## A.    Payments to a Potential Settlement Class

Pursuant to the Agreement, Imperial will issue a notice of the opportunity for all current and former Imperial employees who were employed by Imperial as regular, full-time SSRs for at least one full workweek during the period from October 2, 2010 through October 1, 2013 (the "Three-Year Period") to opt into this action solely for purposes of taking part in the settlement. For purposes of the Agreement and this memorandum, this group of potential opt-ins is referred to as the "Potential Settlement Class."[1] Those individuals who opt into this action for purposes of taking part in the settlement are referred to as "Settlement Class Members." The proposed Notice and Notice of Consent forms that Imperial will send to the Potential Settlement Class are attached hereto as Exhibits B and C, respectively.

Imperial will pay to the Settlement Class Members a total of $275,000. For purposes of the Agreement and this memorandum, the $275,000 set aside for Settlement Class Members is referred to as the "Award Fund." Imperial will distribute the Award Fund to Settlement Class Members in accordance with a formula that is based on the parties' negotiated agreement to (i) credit each Settlement Class Member with 172 overtime hours (or, for those SSRs who worked

---

[1] For the avoidance of doubt, nothing in the Agreement or this memorandum shall be deemed an agreement between the parties that the Potential Settlement Class constitutes the appropriate class members for any purposes other than the proposed settlement, and Imperial hereby explicitly reserves its right to oppose Plaintiff's motion seeking conditional certification.

less than three years during the Three-Year Period, a pro-rated number of overtime hours based on their tenure during the Three-Year Period (the "Pro-Rated Overtime Hours"), (ii) double a Settlement Class Member's award for liquidated damages, and (iii) pay overtime at half-time (while calculating a Settlement Class Member's regular rate assuming a 40-hour workweek).

The parties note that by agreeing to calculate a Settlement Class Member's regular rate by dividing his/her weekly pay (salary plus commission) by 40 hours instead of a higher negotiated number of hours presumed worked during a week, they have credited each Settlement Class Member with an overtime premium rate that is higher than what is required by the FLSA. *See* 29 C.F.R. § 778.109 (providing that an employee's regular rate is determined by dividing such employee's "total remuneration for employment…in any workweek by the total number of hours actually worked by him in the workweek for which such compensation is paid."); 29 C.F.R. § 778.118 ("When the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek … and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at <u>one-half</u> of that rate for each hour worked in excess of the applicable maximum hours standard.") (emphasis added.) Because the Agreement calculates a Settlement Class Member's regular rate by dividing his/her total weekly pay by 40 rather than total number of hours worked in a week, the Settlement Class Member's resulting half-time premium rate is higher than what he/she would be entitled to recover even if such Settlement Class Member successfully litigated his/her claims.

In determining each Settlement Class Member's recovery award under the Agreement, the parties will begin with the Settlement Class Member's average weekly pay (salary plus commission), and divide that amount by 40 to determine the Settlement Class Member's hourly

rate. The parties will then divide the hourly rate in half to determine the Settlement Class Member's overtime premium. The Settlement Class Member's overtime premium will then be multiplied by 172 or the Settlement Class Member's Pro-Rated Overtime Hours, as applicable, generating the Settlement Class Member's presumed back pay amount. This presumed back pay amount will then be doubled to reflect liquidated damages, resulting in the Settlement Class Member's presumptive award. For example, the presumptive award of a Settlement Class Member who worked as an SSR all three years during the Three-Year Period and whose average weekly pay was $600 per week would be calculated as follows: $600 per week ÷ 40 hours per week = $15 hourly rate. $15 ÷ 2 = $7.50 per hour overtime premium. $7.50 per hour * 172 overtime hours = $1,290. $1,290 * 2 (liquidated damages) = $2,580 presumptive award for the Settlement Class Member.

Notwithstanding the foregoing, the total sum of all of the Settlement Class Members' recovery awards is subject to a $275,000 limit under the Agreement, and each Settlement Class Member's actual recovery award will be proportionately reduced below the presumptive award amount if the Settlement Class Members' presumptive awards in the aggregate would exceed the $275,000 limit. In the event all of the Settlement Class Members' presumptive awards do not total at least $275,000, each Settlement Class Member's actual recovery award will be proportionally increased above the presumptive award amount until the limit has been reached, so that the entire $275,000 Award Fund will be paid out to the Settlement Class Members. The parties note that they believe the Settlement Class Members are more likely to receive a proportional increase in their actual recovery awards than a decrease. After all, the $275,000 Award Fund was negotiated by the parties with an assumption that approximately one-third of the 330 members of the Potential Settlement Class would opt into the action for purposes of

taking part in the settlement and that all such opt-ins would have been employed for all three years of the Three-Year Period. Based on the experiences of both Plaintiff's counsel and Imperial's counsel, however, an opt-in rate of 10% - 25% is in fact the norm in an FLSA collective action, with a response rate of 30% or more the exception. Exhibit D, Decl. of Jackson, para. 6; Exhibit E, Decl. of Gray, para. 10; *see also* Julius Getman and Dan Getman, *Winning the FLSA Battle: How Corporations Use Arbitration Clauses to Avoid Judges, Juries, Plaintiffs, and Laws*, St. John's Law Review, Vol. 86:447, p. 451 (2012) *available at* http://www.stjohns.edu/download.axd/b59fe01327a64af9bf08e60de12ee0d7.pdf?d=130502_law _Lawreview_86.2_Getman&Getman ("In FLSA opt-in cases, the opt-in rate seldom tops thirty percent of the class."); George A. Hanson, *Streamlining Wage and Hour Motion Practice,* American Bar Association, p. 3 (2011) *available at* http://www.americanbar.org/ content/dam/aba/administrative/labor_law/meetings/2011/ac2011/182.authcheckdam.pdf ("[O]nly about 16 percent of FLSA class members opt in."). Furthermore, not all of the members of the Potential Settlement Class who choose to opt in will have been employed for all three years of the Three-Year Period. It is therefore likely that Settlement Class Members will receive recoveries that are greater than their presumptive awards. All payments to Settlement Class Members will be subject to applicable tax withholdings.

In exchange for Imperial making the above-described payments, the Settlement Class Members must agree to release Imperial and its related entities and persons from claims for unpaid wages, unpaid overtime, compensatory or punitive damages, liquidated damages, costs, attorneys' fees, and any other relief under the FLSA and any applicable state laws regarding wages and overtime.

**B.      Attorneys' Fees**

As part of the Agreement, Imperial also agrees to pay – from a separate allocation – the Settlement Class Members' attorneys' fees in the amount of $110,000, rendering a total settlement amount of $385,000. For purposes of the Agreement and this memorandum, the $385,000 to be paid by Imperial in settlement is referred to as the "Common Fund."

**C.      Incentive Payment**

In recognition of the role the named Plaintiff played in bringing the lawsuit and facilitating this settlement, Imperial will pay to the named Plaintiff, on top of the recovery he will be eligible to receive as a Settlement Class Member, an incentive payment of $1,500.  Such incentive payment will be paid out of the Award Fund.

**D.      Other Terms**

Finally, the Agreement provides that any unclaimed funds by the Settlement Class Members will be paid to the University of Tennessee College of Law Advocacy Clinic as a *cy pres* award. Specifically, the parties have agreed that the Settlement Class Members will have sixty days from the date Imperial mails checks to negotiate them. After thirty days from mailing, Imperial will provide Plaintiff's counsel with a report reflecting which checks have not been negotiated. After sixty days from issuance, Imperial may stop payment on the checks that have not been negotiated and will provide Plaintiff's counsel with a list of the unpaid checks. Imperial will then prepare a check to the University of Tennessee College of Law Advocacy Clinic as a *cy pres* award in the amount of any such unclaimed funds.

The University of Tennessee College of Law Advocacy Clinic provides representation to financially eligible individuals in a variety of areas, including representing employees in wage and hour claims and other employment-related matters. Should this Court not approve of this *cy*

6

*pres* award, the parties have agreed to submit to the Court a mutually agreeable alternative program or organization for which the unclaimed funds would be paid as a *cy pres* award.

## II. THE AGREEMENT SHOULD BE APPROVED BY THIS COURT

Because this case was brought as a collective action pursuant to § 216(b) of the FLSA, a settlement requires either supervision by the Secretary of Labor or court approval in order to bar subsequent litigation. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706-7 (1945); *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008). Although in an FLSA collective action a court must, like in a Rule 23 class action, find a settlement fair and reasonable, the collective action procedure under the FLSA differs from the class action procedure under Rule 23 of the Federal Rules of Civil Procedure because each employee in an FLSA collective action must provide a consent in writing to opt into the action, and those who do not opt-in are not bound by the settlement or other disposition in the action. *See*, 29 U.S.C. § 216(b); *Moore v. Ackerman Inv. Co.*, 2009 WL 2848858 at *1 (N.D. Iowa Sept. 1, 2009) ("The Court's role in this situation is in many ways comparable to, but in others quite distinguishable from, that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23, and derives from the special character of the substantive labor rights involved."); *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 717 (E.D. La. 2008). *See also Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975). Accordingly, the primary focus of a court's inquiry when reviewing a settlement under the FLSA is to ensure that the settlement reflects a fair resolution of the claims; not, as Rule 23 requires, that the due process interests of absent class members are protected. *See Collins*, 568 F. Supp. 2d at 721-22.

Thus, approval of this FLSA collective action settlement does not require the two-step process of preliminary approval and notice to the class, nor the opportunity to object that is ordinarily required under Rule 23. *See Moore*, 2009 WL 2848858 at *2 (unlike Rule 23 action, §

216(b) "does not expressly require a 'fairness' hearing on a proposed settlement"); *Collins*, 568 F. Supp. 2d at 721-22; 5 Moore's Federal Practice 23.04(1). Because members of an FLSA collective action must consent to join the suit and agree to be represented by the named plaintiffs and their counsel, preliminary notice of the settlement and an opportunity to object are not required. *Moore*, 2009 WL 2848858 at *1.

In the widely cited case of *Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350 (11th Cir. 1982), the Eleventh Circuit Court of Appeals explained that when reviewing a proposed settlement of an FLSA claim, a district court should "scrutiniz[e] the settlement for fairness," and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." 679 F. 2d at 1353-54. *See also Int'l Union, United Auto, Aerospace, and Agr. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("Before approving a settlement, a district court must conclude that it is fair, reasonable and adequate.") As the Court in *Lynn's Food Stores* stated:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

679 F. 2d at 1354. In the case of *Robles v. Brake Masters Systems, Inc.*, 2011 U.S. Dist. LEXIS 14432 at *53-54 (D. N.M. 2011), which approved an FLSA collective action settlement structured almost identically to the one in the present case, the district court explained that the court in *Lynn's Food Stores* "[E]ssentially established four factors to guide the district court in

8

determining whether to approve a FLSA Settlement: (i) was the settlement achieved in an adversarial context? (ii) were the plaintiffs represented by attorneys who can protect their rights? (iii) does the settlement reflect a reasonable compromise over issues that are actually in dispute? and (iv) is the settlement fair?"  2011 U.S. Dist. LEXIS 14432 at *52 (citing *Lynn's Food Stores*, 679 F. 2d at 1353-54).  As explained below, the proposed settlement in the present case satisfies these four requirements.

### A.     The Agreement Was Achieved in an Adversarial Context.

Settlement of this litigation was achieved only after an intensive, lengthy negotiation between Plaintiff's and Imperial's counsel that included an in-person negotiation, and the parties took steps to ensure that the negotiation was at arm's length. Exhibit D, Decl. of Jackson, para. 4; Exhibit E, Decl. of Gray, para. 3. Importantly, before negotiating any other items of the settlement, the parties first negotiated the damages award to be paid to the Potential Settlement Class. Exhibit D, Decl. of Jackson, para. 4; Exhibit E, Decl. of Gray, para. 4. Only after agreeing on the amount at which to settle the Potential Settlement Class' disputed damages did the parties negotiate the amount Imperial would pay for Plaintiff's attorneys' fees, which, as discussed in Section E below, are substantially less than the contingency fee amount provided for in Plaintiff's counsel's contingency fee agreement in the present case. Exhibit D, Decl. of Jackson, para. 4; Exhibit E, Decl. of Gray, para. 5. It was also only after the parties agreed on the Potential Settlement Class' damages award and Plaintiff's attorneys' fees that the parties negotiated the additional $1,500 incentive payment that would be paid to the named Plaintiff.  Exhibit D, Decl. of Jackson, para. 4; Exhibit E, Decl. of Gray, para. 6.

**B.      The Plaintiff and Settlement Class Members are Represented by Attorneys Who can Protect Their Rights.**

Plaintiff's lead counsel has been practicing for almost 24 years and has extensive jury trial and bench trial experience.  Exhibit D, Decl. of Jackson, para. 2.  He has devoted a large portion of his practice over the years to FLSA litigation, and has represented plaintiffs in over 100 FLSA cases. *Id*. at para. 3. He has represented large numbers of plaintiffs in FLSA collective actions, and has obtained notable results in such cases that include large judgments awarded by U.S. District Courts.  *See*, *Cowan v. Treetop Enterprises*, 163 F. Supp. 3d 930 (M.D. Tenn. 2001) (obtained summary judgment on liability and judgment after bench trial on damages of approximately $3 million on behalf of 125 Waffle House unit managers in executive exemption case); *Wilson v. Guardian Angel Nursing, Inc.*, 2008 U.S. Dist. LEXIS 59623 (M.D. Tenn. 2008), and Final Judgment, case #3-07-cv-00069, document 543 (obtained summary judgment on liability and approximately $3.5 million judgment on behalf of 287 nurses in alleged independent contractor case).  Accordingly, counsel representing Plaintiff and the Settlement Class Members can adequately protect their rights.

**C.      The Settlement Reflects a Reasonable Compromise Over Issues that are Actually in Dispute.**

Imperial vigorously disputes in this case, among other things, whether the SSRs were properly classified as exempt employees, whether they in fact worked any overtime hours, whether class certification would even be appropriate given the many different types of accounts to which Imperial's SSRs were assigned throughout different states, whether the SSRs are entitled to an extended three-year statute of limitations, and whether the SSRs are entitled to liquidated damages. Exhibit E, Decl. of Gray, para. 7. If Imperial were successful at trial in proving that the SSRs were exempt pursuant to the outside sales and/or administrative

10

exemptions, they would not be entitled to any overtime back pay or other damages. Similarly, if Imperial were successful at trial in proving that the SSRs did not in fact work overtime, they also would not be entitled to any overtime back pay or other damages. In either such circumstance, it is quite possible that the Plaintiff's case would prove unsuccessful after great time and expense, and the settlement avoids this potential outcome by providing all Settlement Class Members with a negotiated overtime recovery. In addition, the proposed settlement is based on a recovery of up to three years – an extended statute of limitations period available under 29 U.S.C. § 255(a) only if a plaintiff can prove that an FLSA violation was willful – which the Plaintiff may well not have been able to establish at trial. The proposed settlement also includes liquidated damages, which are not available if a defendant can prove that an FLSA violation was in good faith, *see* 29 U.S.C. § 216(b), and which the Plaintiff may not have been entittled following trial. The complexities and uncertainties of this case and the negotiated compromise agreed to by Imperial therefore make the proposed settlement desirable. *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist LEXIS 74994, *20-21 (S.D. OH May 30, 2012) ("In short, there are factual and legal complexities present in this case that cut against a clear determination of the Plaintiffs' likelihood of prevailing on the merits, such that a settlement at this juncture of the case is desirable.")

      **D.**    **The Settlement is Fair.**

      The Sixth Circuit has identified seven factors, which are applied in Rule 23 class actions, that should aid courts in their determination of whether an FLSA collective action settlement is fair:

      1)     The risk of fraud or collusion;

      2)     The complexity, expense, and likely duration of litigation;

3)       The amount of discovery engaged in by the parties;

4)       The likelihood of success on the merits;

5)       The opinions of class counsel and class representatives;

6)       The reaction of absent class members; and

7)       The public interest.

*Crawford*, 2008 WL 4724499 at *3 (*citing Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983).

Of the above-listed factors, "[t]he Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Redington v. Goodyear Tire & Rubber Co.,* 2008 WL 3981461, *11 (N.D. Ohio August 22, 2008) (citing *Granada*, 962 F.2d at 1205-06). Because this case is a § 216(b) collective action rather than a Rule 23 class action, one of these factors is inapplicable, as discussed in more detail below. As also discussed in detail below, consideration of the remaining factors favors a finding that the proposed settlement is fair and reasonable.

         **1.**      **The Absence of Fraud or Collusion in the Settlement Favors Approval.**

An initial presumption exists that a settlement is fair where counsel for the parties negotiate the settlement at arm's length. *Murillo v. Texas A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996). Settlement of this litigation was achieved only after an intensive, lengthy negotiation between Plaintiff's and Imperial's counsel that included an in-person negotiation. Exhibit D, Decl. of Jackson, para. 4; Exhibit E, Decl. of Gray, para. 3.

Furthermore, the parties took appropriate steps in negotiating this comprehensive settlement, which includes (1) payment to the Settlement Class Members, (2) payment for the Plaintiff's and Settlement Class Members' attorneys' fees out of a separate allocation, and (3) an additional payment to the named Plaintiff for his leadership in the case.

Importantly, before negotiating any other items of the settlement, the parties first negotiated the damages award to be paid to the Potential Settlement Class. Exhibit D, Decl. of Jackson, para. 4; Exhibit E, Decl. of Gray, para. 4. Only after agreeing on the amount at which to settle the Potential Settlement Class' disputed damages did the parties negotiate the amount Imperial would pay for Plaintiff's attorneys' fees, which, as discussed in Section E below, are substantially less than the contingency fee amount provided for in Plaintiffs' counsel's contingency fee agreement in the present case. Exhibit D, Decl. of Jackson, para. 4; Exhibit E, Decl. of Gray, para. 5.

It was also only after the parties agreed on the Potential Settlement Class' damages award and Plaintiff's attorneys' fees that the parties negotiated the additional $1,500 incentive payment that would be paid to the named Plaintiff. Exhibit D, Decl. of Jackson, para. 4; Exhibit E, Decl. of Gray, para. 6. Such incentive payments may be made in class-action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation. *See Rotuna v. West Customer Mgmt. Group, LLC*, 2010 U.S. Dist. LEXIS 58912 , *18 (N.D. OH June 15, 2010) (approving a $3,500 incentive award, reasoning that "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation"); *Quintanilla v. A & R Demolition, Inc.*, 2007 WL 5166849, *3 (S.D. Tex. May 7, 2007) (*citing De Hoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) (approving award of $5,000 to named plaintiffs in Rule 23(b)(2) class

action suit); *Henderson v. Eaton*, 2002 WL 3145728 (E.D. La. Oct. 25, 2002) (approving award of $3,000 to named plaintiff who participated extensively in litigation). Here, the named Plaintiff helped organize this case and represented the interests of the Potential Settlement Class during the negotiation of the settlement of this case. Without the leadership of the named Plaintiff, the proposed settlement would never have come to fruition. Exhibit D, Decl. of Jackson, para. 9. Accordingly, the amount of the incentive pay agreed to by the parties is reasonable and in line with amounts that have been approved by courts in similar litigation. While significant, the proposed incentive pay is not an amount that would affect the Agreement's fairness, reasonableness, or adequacy, or an amount that would interfere with the parties' arm's-length settlement negotiations.

        **2.**      **The Complexity, Expense, and Likely Duration of this Case, Were it not to Settle, Favors Settlement.**

The complexity, expense, and likely extended duration of this case (were it not to settle at this time) are significant factors that all favor settlement. Should this case not settle at this early stage of litigation, it should be expected that Plaintiff's claims will be vigorously litigated through a response in opposition to conditional certification, dispositive motions, a motion for decertification, trial, and, likely, appeal. Furthermore, due to the factual and legal complexities of this case, including questions about whether SSRs, scattered throughout many different states and assigned to many different types of accounts with many different compensation arrangements, perform exempt duties; whether SSRs work any overtime hours; and whether SSRs are similarly situated for purposes of a collective action, both parties would need to expend a great deal of time and expense to pursue discovery. Given the complexities of the claims at issue and the expense and extended duration of continuing litigation, settlement is in the interest of both the Plaintiff and Imperial and is in the interest of judicial economy. *See Kritzer v. Safelite*

14

*Solutions, LLC*, 2012 U.S. Dist LEXIS 74994, *21 (S.D. OH May 30, 2012) (finding the factual and legal complexities of the case and the subsequent great expense of pursuing discovery to favor settlement).

> 3.      **The Discovery Taken By the Parties Favors Approval of the Settlement.**

Although the parties have not yet engaged in formal discovery, Imperial undertook a sizeable amount of informal discovery, including interviewing SSRs in many different states who are assigned to many different types of accounts and who have many different compensation arrangements, as well as interviewing SSR supervisors and account managers. Exhibit F, Decl. of Feingold, para. 3. Such informal discovery focused on the duties and hours of both SSRs assigned to the Bi-Lo account (like the named Plaintiff), and SSRs assigned to other Imperial accounts in different states. *Id.* Prior to reaching this settlement, Imperial shared with Plaintiff's counsel information it learned from its informal discovery, including the fact that interviews from a sampling of SSRs from different states and Imperial accounts – including two of the named Plaintiff's counterparts who are also SSRs for the Bi-Lo account – revealed that they do not work any overtime hours.  Exhibit E, Decl. of Gray, para. 8.

The Agreement reflects such informal discovery, with the amount of damages agreed to by the parties reflecting what they believe is a fair and reasonable settlement of their bona fide dispute about whether SSRs are eligible for overtime pay and, if so, whether they in fact worked overtime hours for which they must be compensated. Moreover, resolving the case at this early stage of the proceedings will avoid the uncertainty, expense, and extended duration of moving forward with litigation spanning seventeen different states. For these reasons, the informal discovery engaged in to date favors approval of the settlement.  Formal discovery is not a prerequisite for approval of an FLSA settlement. *See Rotuna v. West Customer Mgmt. Group,*

*LLC*, 2010 U.S. Dist. LEXIS 58912, *18 (N.D. OH June 15, 2010) (approving an FLSA class action settlement prior to the parties engaging in discovery); *Robles v. Brake Masters Systems, Inc. et al*, 2011 US Dist. LEXIS 14432, *53-54 (D. N.M. Jan. 31, 2011) (same).

### 4. The Uncertainty of this Litigation Favors Settlement.

The numerous factual and legal issues in this case make the Plaintiff's likelihood of success far from certain and settlement a desirable outcome. More particularly, the parties will vigorously dispute in this case, among other things, whether the SSRs were properly classified as exempt employees, whether they in fact worked any overtime hours, whether class certification would even be appropriate given the many different types of accounts to which Imperial's SSRs were assigned throughout different states, whether the SSRs are entitled to an extended three-year statute of limitations, and whether the SSRs are entitled to liquidated damages. Exhibit E, Decl. of Gray, para. 7. In these circumstances, it is quite possible that the Plaintiff's case would prove unsuccessful after great time and expense. In addition, the proposed settlement is based on a recovery of up to three years, which is an extended statute of limitations period available if a plaintiff can prove that any violation of the FLSA was willful. *See*, 29 U.S.C. § 255(a). The proposed settlement also includes liquidated damages, which are not available if a defendant can prove that any violation of the FLSA was in good faith. *See* 29 U.S.C. § 216(b). Accordingly, Plaintiff strongly prefers the certainty of the proposed settlement to the risks associated with continued litigation. Likewise, Imperial understands the risk of litigating the claims at issue and prefers the certainty of the proposed settlement to the risks and costs associated with continued litigation. The complexities and uncertainties of this case therefore make the proposed settlement desirable. *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist LEXIS 74994, *20-21 (S.D. OH May 30, 2012) ("Were this case to move forward, Plaintiffs would likely be required to undertake a costly and lengthy discovery process in order to determine the specific hours, times,

16

and dates that the class members worked. And even then, there is no guarantee that the legal issues would be resolved in Plaintiff's favor, as Defendants have sharply contested [these issues]. In short, there are factual and legal complexities present in this case that cut against a clear determination of the Plaintiffs' likelihood of prevailing on the merits, such that a settlement at this juncture of the case is desirable.")

### 5. The Opinions of Class Counsel and Class Representative Favor Settlement.

Plaintiff's lead counsel, R. Scott Jackson, Jr. ("Mr. Jackson"), has litigated numerous collective action cases of many different types, and has obtained substantial judgments on behalf of FLSA plaintiffs in collective actions. Exhibit D, Decl. of Jackson, para. 3. Based on this experience, Mr. Jackson believes the settlement is fair. *Id*. After an intensive and lengthy negotiation process that included an in-person settlement negotiation, an arm's-length settlement was reached that, in the view of Mr. Jackson, affords the Plaintiff and the Settlement Class Members significant and meaningful financial benefits. *Id*. at para. 6.

The named Plaintiff has conveyed his satisfaction with the results obtained. *Id*., para. 6. All in all, both Mr. Jackson and the named Plaintiff believe the settlement to be fair, reasonable, and adequate, and Imperial's counsel agrees. Exhibit D, Decl. of Jackson, para. 5; Exhibit E, Decl. of Gray, para. 9. These consistent opinions of Plaintiff's and Imperial's counsel in finding the settlement to be fair, reasonable, and adequate favor approval of the settlement. *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist LEXIS 74994, *23 (S.D. OH May 30, 2012) (giving weight to the belief of experienced counsel that a settlement is in the best interests of the class); *Robles*, 2011 U.S. Dist. LEXIS 14432, at *53 (D. N.M. 2011) (relying on declaration of plaintiff's counsel that settlement was fair).

### 6. The Reaction of Absent Class Members is Irrelevant in this Matter.

As discussed above, this case is a collective action brought pursuant to § 216(b) of the FLSA. Unlike a Rule 23 class action, there are not any absent class members. Anyone from the Potential Settlement Class who opts in will have agreed to be bound by the settlement reached, and the settlement will not be binding on those who do not choose to opt in.

### 7. Approval of this Settlement is in the Public's Interest.

"If the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage or computation of back wages, a court may approve a settlement to 'promote the policy of encouraging settlement of litigation.'" *Crawford*, 2008 WL 4724499 at \*9 (*citing Lynn's Food Stores, Inc.*, 679 F.2d at 1353). In disputes over employees' FLSA rights, "[s]ettlement is the preferred means of resolving litigation." *Id.* (*citing Collins*, 568 F. Supp. 2d at 720 (*citing Williams v. Nat'l Bank*, 216 U.S. 582 (1910))).

The proposed settlement of this action is clearly in the public's interest. As a general principle, it is in the public's interest for employees' wage disputes to be resolved. Should the proposed settlement be approved, this Court will ensure that the Settlement Class Members (who all work or worked for Imperial as SSRs) will receive the benefit of a Court-approved FLSA settlement, while Imperial can continue its operations without the costs and inconvenience of litigation. It is in the benefit of all employees for a federal court, such as this Court, to supervise the settlement of a wage dispute in these circumstances.

### E. Plaintiff's Proposed Attorneys' Fees are Reasonable.[2]

In the present case, Plaintiff's counsel has a contingency fee agreement that provides for attorneys' fees of 40% of any recovery. Exhibit D, Decl. of Jackson, para. 7. Plaintiff's lead

---

[2] The arguments and representations set forth in this subpart E are those of the Plaintiff or Plaintiff's counsel. Imperial does not join in the specific statements in this subpart but does not object to the contention that the total amount of Plaintiff's attorneys' fees and expenses are reasonable.

counsel has utilized such an agreement and recovered fees based on such a percentage in over 100 FLSA cases, including collective actions and inidividual cases. *Id*. Notwithstanding counsel's fee agreement, the proposed settlement provides for a fee that constitutes only 28.5% of the $385,000 Common Fund ($110,000), which covers both lead counsel and his local co-counsel, Warren & Griffin, P.C. This fee is not only substantially less than the fees provided for in Plaintiff's counsel's 40% contingency fee agreement in this case, but is also well within the range of contingency fee percentages that other courts have approved. *See, e.g.*, *Dillworth v. Case Farms Processing, Inc.*, 2010 U.S. Dist. LEXIS 20446, *21 (N.D. OH March 8, 2010) (finding a one-third contingency fee recovery to be reasonable and approved in similar FLSA collective actions in the Sixth Circuit); *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 U.S. Dist. LEXIS 86741, at *41-48 (W.D. Okla. 2008) (approving fees equal to 33% of total settlement); *Cimarron Pipeline Constr., Inc. v. Nat'l Council On Comp. Ins.*, 1993 U.S. LEXIS 19969, at *4 (W.D. Okla. 1993) (fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis"); *In re Public Service Co. of New Mexico*, 1992 U.S. Dist. LEXIS 16326 (S.D. Cal. 1992) (approving fee award of 33.4% on a $33 million recovery); *Robles*, 2011 U.S. Dist. LEXIS 14432, at *54 (finding fee that was 18.77% of the common fund "comfortably within the range" that courts in Tenth Circuit have approved:  "The Tenth Circuit has held that a Court may approve attorneys' fees based on a percentage of the common fund bestowed upon the class, provided the fees are reasonable." (citing *Brown v. Phillips Petroleum Co.*, 838 F. 2d 451, 454 (10th Cir. 1988)). Moreover, such fees are not taken from the $275,000 Award Fund, but are paid from a separate allocation. *See*, *e.g., Robles*, 2011 U.S. Dist. LEXIS 14432 at *53-54 (citing such a factor in approving fee award

in FLSA collective action: "Under the proposed Settlement Agreement, attorneys' fees are not taken from the $500,000 award fund, but are paid from a separate allocation.").

In the present case, Plaintiff's counsel undertook the representation of a potentially large group of plaintiffs with no assurance at the outset that they would ultimately be compensated, and with the additional risk of advancing thousands of dollars in expenses. Exhibit D, Decl. of Jackson, para. 8. Plaintiff's counsel has spent considerable time and effort in investigating the factual basis of the lawsuit and researching the legal issues, filing the lawsuit, preparing the motion for court-supervised notice and extensively briefing the notice issue, negotiating the proposed settlement, and preparing the present motion with supporting proof, memorandum, notice, consent, and proposed orders. *Id.* Furthermore, even though the proposed settlement would be achieved at the early stages of litigation, the settlement will require Plaintiff's counsel to spend substantial additional time in monitoring the notice process; responding to inquiries about the settlement from the Potential Settlement Class and Settlement Class Members; receiving, reviewing, and filing Notice of Consent forms in a timely fashion; following up and correcting any improperly completed Notice of Consent forms; and ensuring that Settlement Class Members receive the appropriate recoveries provided for in the Agreement. Plaintiffs' counsel will have to review a large number of documents provided by Imperial to ensure the accuracy of the number of recoverable workweeks, average weekly pay, and overtime premium calculations of each Settlement Class Member. *Id.* Plaintiffs' counsel will take on the representation of and responsibility for a large number of Settlement Class Members who opt into the lawsuit. *Id.*

## CONCLUSION

The proposed Agreement offers the Settlement Class Members significant recovery, particularly in light of the uncertainties of litigation and the possibility that even if class certification were appropriate (which would be a hotly contested issue), the Court may ultimately find no liability and/or no damages. The parties therefore jointly request that the Court approve the settlement of this matter by entering the proposed order attached as Exhibit G hereto.

Respectfully submitted,

/s/ Russell W. Gray
**RUSSELL W. GRAY**
Baker, Donelson, Bearman,
   Caldwell & Berkowitz, Pc
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450
423-756-2010
rgray@bakerdonelson.com

**JONATHAN D. ROSENFELD** (admitted *Pro Hac Vice*)
**ARIELLA FEINGOLD** (admitted *Pro Hac Vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
jonathan.rosenfeld@wilmerhale.com
ariella.feingold@wilmerhale.com

*Attorneys for Defendant*

/s/ R. Scott Jackson, Jr. (with permission)
**R. SCOTT JACKSON, JR., #013839**
Attorney at Law
4525 Harding Road
Suite 200
Nashville, TN 37205
615-313-8188
rsjackson@rsjacksonlaw.com

21

**JOHN R. MCCOWN**
Warren & Griffin, P.C.
513 Benjamin Way
Suite 208
Dalton, GA  30721
423-265-4878
john.mccown@gmail.com

*Attorneys for Plaintiff*

Dated:  October 1, 2013

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing *Memorandum in Support of Joint Motion for Approval of Settlement Agreement* has been served on the following via the Court's electronic filing system:

> R. Scott Jackson, Jr.
> Attorney at Law
> 4525 Harding Road
> Suite 200
> Nashville, TN 37205
> rsjackson@rsjacksonlaw.com

on this the 1st day of October, 2013

/s/ Russell W. Gray           